[Cite as *State v. Cooper*, 2018-Ohio-2965.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

JAYTRON COOPER                          :
                                        :
    Plaintiff-Appellant             :     Appellate Case No. 27861
                                        :
v.                                      :     Trial Court Case No. 17-CV-5194
                                        :
MONTGOMERY COUNTY SHERIFF                :     (Civil Appeal from
                                        :      Municipal Court)
    Defendant-Appellee              :
                                        :

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of July, 2018.

. . . . . . . . . . .

JAYTRON COOPER, 51 Grafton Avenue, Apt. 205, Dayton, Ohio 45406
    Plaintiff-Appellant, Pro Se

ALEX J. HALE, Atty. Reg. No. 0091682, and ADAM M. LAUGLE, Atty. Reg. No. 0092013,
301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Jaytron Cooper appeals pro se from the trial court's dismissal of his civil claims against the Montgomery County Sheriff. Finding no error, we affirm.

## I. Case History

{¶ 2} In 2010, Cooper was found guilty of possession of cocaine (less than one gram) in violation of R.C. 2925.11(A), a fifth-degree felony, and trafficking marijuana in violation of R.C. 2925.03(A)(2), also a fifth-degree felony. He was also found guilty of two one-year firearm specifications attached to each count. The trial court sentenced Cooper to a total of two years in prison—concurrent one-year prison terms for the possession and trafficking offenses and, merging all of the firearm specifications, a consecutive one-year term on those. Cooper appealed his convictions, and we affirmed. *State v. Cooper*, 2d Dist. Montgomery No. 24321, 2011-Ohio-5017.

{¶ 3} This is how we described what happened in our previous opinion:

On December 2, 2009, at 6:53 p.m., an unidentified male called 911 and reported that he had heard six gunshots and saw three African-American males run into the apartment at 5150 Northcutt Place in Harrison Township. Montgomery County sheriff's deputies were dispatched to the scene. Deputy Hutson went to the back door while another deputy watched the front door. Deputy Hutson could hear a television or radio playing inside the apartment and, after Hutson knocked on the door several times, without any response, the volume was turned up.

At 7:11 p.m., a person identifying himself as Shawn Parker called 911. Parker reported that his son had sent him a text message saying that

he was being robbed and held against his will in the apartment at 5150 Northcutt Place. The police dispatcher advised deputies on the scene that the caller's son said he could see the responding officers outside, and that he was being held inside a closet upstairs.

While standing by the back door, Deputy Hutson saw a male briefly stick his head out of second story bathroom window and then quickly close that window. Deputy Hutson knocked louder on the back door to overcome the sound of the radio or television. Moments later, Defendant opened the door. When Defendant saw the officers, he immediately slammed the door shut. Believing that emergency circumstances existed justifying a warrantless entry into the residence, officers entered the apartment.

Inside the residence police found six men in the living room, another man coming down the stairs, and another man upstairs. Officers immediately began searching for the victim of the reported robbery/abduction, but no victim was found. While in the kitchen area, police noticed a very strong odor of marijuana and observed, in plain view, a plastic cup half full of marijuana lying in an open trash can. A second search for the victim was conducted by police because none of the people present admitted to being the victim of a robbery/abduction. During that second search police looked inside closets and under the bed. In a first floor closet, police discovered a bulletproof vest. In an upstairs bedroom, when police lifted the mattress to look under the bed, they discovered several firearms. Police recognized many of the individuals in the apartment as persons who

had previously been trespassed off the property, and they were arrested.

After police removed all of the individuals from that apartment, they obtained a search warrant for the premises. During execution of that search warrant, in the upstairs bedroom police recovered from under the mattress the multiple firearms they had previously seen while searching for the victim. Also in that bedroom, police discovered an electric utility bill for the residence in Defendant's name, and a cigar box inside a tub full of men's clothing. Inside that cigar box police found a small plastic baggie containing crack cocaine, and a large plastic baggie filled with twelve smaller baggies that each contained a small amount of marijuana. The small baggies of marijuana were packaged for sale. A search of the remainder of that apartment produced baggies with pills in them, digital scales, and other drugs and guns. After the search, Defendant told Detective Reed that he lived at that apartment and had been home sleeping since 9:00 a.m.

*Cooper* at ¶ 2-6.

{¶ 4} Six years after his conviction, in November 2017, Cooper filed a pro se complaint against the Montgomery County Sheriff, which asserted civil claims related to his 2010 criminal case. The Sheriff moved to dismiss for failure to state a claim under Civ.R. 12(B)(6). The trial court granted the motion and dismissed Cooper's claims.

{¶ 5} Cooper appeals.

## II. Analysis

{¶ 6} Cooper's pro se appellate brief does not set out specific assignments of error for us to review. We have done our best to figure out what he is alleging went wrong in

the trial court. It turns out that his allegations are less about what went wrong in the trial court in this civil lawsuit and more about what went wrong in the trial court in his criminal case. His complaint alleges that the police did not corroborate a 911 call before entering the residence, where they believed a minor was being held, that a subsequent search warrant was tainted by the initial intrusion, that his co-defendant's result was different, and miscellaneous other complaints about his prosecution and trial. He does not mention anything anywhere in the complaint that the named defendant, the "Montgomery County Sheriff," did or failed to do.

{¶ 7} "A motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Civ.R.12(B)(6), tests the sufficiency of a complaint. In order to prevail, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief." *Smith v. Ohio Adult Parole Auth.*, 2d Dist. Champaign No. 2009 CA 22, 2010-Ohio-1131, ¶ 33. "The court must construe the complaint in the light most favorable to the plaintiff, presume all of the factual allegations in the complaint as true, and make all reasonable inferences in favor of the plaintiff." *Id.* "We utilize a de novo standard when reviewing a trial court's decision to dismiss a complaint pursuant to Civ.R. 12(B)(6)." *Haynes v. Dayton Metro. Hous. Auth.*, 188 Ohio App.3d 337, 334, 2010-Ohio-2833, 935 N.E.2d 473, ¶ 17 (2d Dist.), citing *Smith* at ¶ 35.

{¶ 8} On the first page of his complaint, Cooper wrote that he wanted the court "[t]o Recognize that the Facts are Frivolous an[d] without Corroboration not Serious enough to Enter One[']s Home under the 4th Amendment of the Constitution." The five pages that followed were identical to five of the pages in his appellate brief. It appears that Cooper's primary allegations here were that the police entry into his home and their discovery of

guns under the mattress were both unlawful. Cooper alleged the same in his direct appeal.

{¶ 9} As to the warrantless entry, we concluded in our previous decision that it was reasonable and lawful under the Fourth Amendment's emergency exception, under which " 'a police officer, even absent a warrant or probable cause, may lawfully enter a structure, including a private home, when the totality of the facts and circumstances known to the officer gives rise to a reasonable belief that immediate entry is necessary to either protect that property or assist people inside who may be in danger or in need of immediate aid.' " *Cooper*, 2d Dist. Montgomery No. 24321, 2011-Ohio-5017, at ¶ 13, quoting *State v. Overholser*, 2d Dist. Clark No. 96-CA-0073, 1997 WL 451473, *2 (July 25, 1997). When officers entered Cooper's home, we said, they had a reasonable belief, based on the totality of the facts and circumstances, that there might be a person inside who was in danger or in need of immediate aid. *Id.* at ¶ 16.

{¶ 10} Cooper argues that the anonymous tip was an insufficient reason for police to enter his home. In our previous decision we noted that "[c]alls from identified citizen informants are recognized as possessing greater reliability than tips received from anonymous callers or known criminal informants, and therefore a strong showing as to other indicia of reliability may be unnecessary." *Id.* at ¶ 18, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 720 N.E.2d 507 (1999). We concluded:

Under these facts and circumstances, it was reasonable for police to believe that the reported robbery victim who was being held hostage, as well as the perpetrators of the robbery, were still inside the home, and that the victim might be in danger or in need of immediate aid. Accordingly, police were

privileged to enter the home without a warrant for the sole purpose of looking for the victim and rendering any assistance the victim might need. (Citation omitted.) *Id.* at ¶ 20.

**{¶ 11}** As to the discovery of the guns under the mattress, we concluded that the police "observed [the guns] in plain view during their warrantless emergency entry." *Id.* at ¶ 25. And we concluded that the police "properly limited the scope of their search to places where a person or body can hide or be hidden." *Id.* at ¶ 22.

**{¶ 12}** In his brief, Cooper refers to the fact that we reversed the convictions of his co-defendant, Stefoun Hunter, which depended on the evidence of the guns found under the bed. Cooper is right, but that is not the whole story. In Hunter's case, the trial court found that police found the guns under the bed and that the discovery satisfied the inadvertency requirement of the plain-view exception. But we concluded that the evidence did not support a finding that the guns were under the bed. "[T]he trial court should have found," we said, "based on the evidence at the suppression hearing, that the weapons were found *between the mattress and the box springs.*" (Emphasis added.) *State v. Hunter*, 2d Dist. Montgomery No. 24350, 2011-Ohio-6321, ¶ 41 (*Hunter I*). We remanded the case for the trial court to determine whether the discovery of the guns in that location satisfied the inadvertency requirement. On remand, the court found that the requirement was satisfied and resentenced Hunter on all counts. Hunter appealed again. Noting that the trial court had made its finding based on testimony given at Cooper's suppression hearing, we concluded that the court had erred by, in essence, taking judicial notice of testimony given in a different proceeding. But we affirmed the convictions anyway because there was testimony given at Hunter's trial that was sufficient to support the trial

court's finding, rendering the error harmless. *State v. Hunter*, 2d Dist. Montgomery No. 25164, 2013-Ohio-3459, ¶ 20 (*Hunter II*). The result in Hunter's case is therefore no different than that in Cooper's.

{¶ 13} "Pursuant to the doctrine of res judicata, a valid and final judgment on the merits bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *State v. Collins*, 2d Dist. Montgomery No. 25612, 2013-Ohio-3645, ¶ 9, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). "Res judicata applies to any issue that was raised or could have been raised in a criminal defendant's prior appeal from his conviction." *State v. Graham*, 2d Dist. Montgomery No. 27033, 2017-Ohio-4093, ¶ 13, citing *Collins.* Here, because the Fourth Amendment issues raised by Cooper have already been raised and decided, they may not be litigated again in this civil case.

{¶ 14} Cooper also alleges that it was unlawful for him to be sent to prison for a fifth-degree felony. But he could have raised this issue in his prior appeal, so this issue too is barred by res judicata. In addition, the issue is moot because Cooper has completed his prison sentences. *See State v. Mollett*, 2d Dist. Clark No. 2014-CA-85, 2015-Ohio-1670, ¶ 11 (concluding that sentencing issues raised by the defendant were moot because she had completed her prison sentence and the court could grant no meaningful relief).

{¶ 15} Cooper raises several other issues as well, and we have considered each of them. All the remaining issues relate to Cooper's criminal case and could have been raised in his prior appeal. They are all barred by res judicata.

{¶ 16} Even construing the complaint in the light most favorable to Cooper,

presuming all the factual allegations in his complaint are true, and making all reasonable inferences in his favor, we see no set of facts that would entitle Cooper to relief.

### III. Conclusion

{¶ 17} We find no error in the dismissal of Cooper's complaint. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Jaytron Cooper
Alex J. Hale
Adam M. Laugle
Hon. Steven K. Dankof